**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLASKET RENWABLE INVESTMENTS, LLC,<br><br>*Petitioner*,<br><br>v.<br><br>KINGDOM OF SPAIN,<br><br>*Respondent.* | Civil Action No. 25-1756 (RDM) |

**MEMORANDUM OPINION**

In June 2025, Blasket Renewable Investments LLC ("Blasket") brought this case to enforce three arbitral awards issued by a tribunal of the International Centre for Settlement of Investment Disputes ("ICSID") against the Kingdom of Spain. Dkt. 1 at 1 (Pet.). Under the arbitration exception of the Foreign Sovereign Immunities Act ("FSIA"), Spain is not entitled to sovereign immunity from this proceeding. *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1102–03 (D.C. Cir. 2024); Dkt. 18-1 at 47 ("Spain recognizes that in NextEra the D.C. Circuit held that U.S. courts have jurisdiction to enforce intra-EU arbitration awards [like this one] under the FSIA's arbitration exception to sovereign immunity"). In December 2025, the Kingdom of Spain moved to dismiss Blasket's petition or to stay the case pending the resolution of related proceedings before the D.C. Circuit and the Supreme Court, Dkt. 18, and Blasket opposed that motion and requested that the Court "enter judgment on the Awards," Dkt. 23 at 55. Spain's motion to dismiss is now fully briefed and ripe for decision. For the reasons explained below, the Court will **DENY** the Kingdom of Spain's motion to

dismiss or to stay the case, and will **ENTER** judgment on the awards in Blasket's favor in the full amount specified in the awards.

## I. BACKGROUND

### A. The ICSID Convention

The ICSID Convention, 17 U.S.T. 1270, 575 U.N.T.S. 159, "is a multilateral treaty aimed at promoting private international investment." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 514 (D.C. Cir. 2023). The Convention established an international institution—the International Centre for Settlement of Investment Disputes—and charged it with "maintaining a legal framework and a reliable process for the resolution of disputes between private investors and governments." *Id.* Among other things, the ICSID convenes tribunals for the mediation and arbitration of investment disputes between countries whose governments have signed and ratified the Convention—Contracting States—and nationals of other Contracting States. *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. 23-cv-2701, 2024 WL 4298808, at *2 (D.D.C. Sept. 26, 2024); ICSID Convention art. 1(2). Under 22 U.S.C. § 1650a, any pecuniary obligation imposed by an ICSID "award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

Article 25 of the Convention provides that the ICSID's "jurisdiction . . . shall extend to any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting State, which the parties to the dispute consent in writing to submit." ICSID Convention art. 25(1). "When the parties have given their consent, no party may withdraw its consent unilaterally." *Id.* The parties may, however, object to the arbitral tribunal's jurisdiction over or competence to decide the dispute. *Id.* art. 41(2). The tribunal "shall be the judge of its own competence." *Id.* art. 41(1); *see Blasket*, 2024 WL 4298808, at *2.

The tribunal must issue its awards "in writing," and the award must "address every question submitted by the parties and . . . state the reasons upon which the arbitration decision and award are based." ICSID Convention art. 48(2)–(3).

"Of particular note here, Article 53 of the Convention provides that a party dissatisfied with an award may challenge it on various grounds, but may do so only through proceedings at the Centre and not collaterally in the courts of member states." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 101 (2d Cir. 2017); ICSID Convention art. 53(1). Accordingly, "[t]he only route for setting aside an ICSID Arbitral Tribunal's award is through the ICSID Convention's annulment process." *Valores*, 87 F.4th at 515; *see* ISCID Convention art. 52. The ICSID does not, however, have the authority to enforce arbitral awards. *Valores*, 87 F.4th at 515. To enforce an ICSID award, a party must rely on the courts of a Contracting State. *Id.* Such courts "may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro*, 863 F.3d at 102. They are "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Id.*

**B. The Arbitration Proceedings**

In 1997, Respondent Kingdom of Spain ("Spain") adopted legislation creating financial incentives and other inducements for firms to "invest[] in renewable energies . . . within its territory." Dkt. 1 at 4 (Pet. ¶ 13). Blasket's predecessors in interest, OperaFund, Schwab, Steag, and Renergy, relied on these financial incentives to invest in Spanish companies that owned and operated wind farms within Spain. *Id.* at 3–4 (Pet. ¶¶ 4–5, 13). Between 2012 and 2017, however, Spain adopted laws that rolled back and eventually revoked the economic incentives on which OperaFund, Schwab, Steag, and Renergy had relied. *Id.* at 4 (Pet. ¶ 13).

Both Spain and Malta, Switzerland, Germany, and Luxembourg—where, respectively, OperaFund, Schwab, Steag, and Renergy are incorporated—were parties to the Energy Charter Treaty ("ECT"), 2080 U.N.T.S. 95, during the events in question. *Id.* at 5 (Pet. ¶¶ 15–17).[1] The ECT "establishes a legal framework in order to promote long-term cooperation in the energy field." ECT art. 2; *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1094 (D.C. Cir. 2024). It requires contracting parties to "encourage and create stable, equitable, favourable and transparent conditions" for investment by investors located or incorporated in other contracting parties. ECT art. 10(1). Contracting parties agree to submit disputes arising under the ECT to international arbitration. *Id.* art. 26(3)(a). Parties to the ICSID Convention, including Spain, Malta, Switzerland, Germany, and Luxembourg,[2] further consent to submit disputes arising under the ECT to the ICSID. *Id.* art. 26(4)(a)(i). Consistent with those procedures, between 2014 and 2015, OperaFund, Schwab, Steag, and Renergy filed requests for arbitration under the ICSID Convention. Dkt. 1 at 5 (Pet. ¶ 19).

1. *The OperaFund Award*

The ICSID conducted a hearing for OperaFund's and Schwab's claims in June of 2018. Dkt. 1 at 6 (Pet. ¶¶ 20–21). OperaFund and Schwab, the claimants, asked the ICSID Tribunal to declare that the Tribunal had jurisdiction to hear all their claims under the ECT and that Spain breached its obligations under the ECT, and to order Spain to pay compensatory damages and

[1] Spain has since announced its intention to withdraw from the ECT. *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1094 (D.C. Cir. 2024) ("While these cases were pending, the EU, Spain, and Luxembourg each announced its intention to withdraw from the ECT.").

[2] *See* ICSID, *List of Contracting States and Other Signatories of the Convention* (August 25, 2024), www.icsid.worldbank.org/sites/default/files/ICSID%203/2024%20-%20Aug%2025%20-%20ICSID%203%20-%20ENG.pdf [https://perma.cc/CN5X-H72R].

arbitration costs. Dkt. 1-1 at 34 (Ex. A ¶ 110). Spain countered that the Tribunal lacked jurisdiction, *id.* at 102–03 (Ex. A ¶¶ 336–38), and that it had not breached its obligations under the ECT, *id.* at 143–44 (Ex. A. ¶¶ 421–23). On the jurisdictional issue, Spain argued, among other things, that the ECT "excludes arbitration between investors from the EU and Member States" of the EU. *Id.* at 103 (Ex. A ¶ 336). The Tribunal referred to this argument as the "intra-EU objection." *Id.* at 102 (Ex. A).

On September 6, 2019, the Tribunal issued a 273-page OperaFund Award. Dkt. 1 at 6 (Pet. ¶ 22). The Award resolved Spain's jurisdictional challenges by concluding that "it had jurisdiction to resolve OperaFund and Schwab's claim, except as to a narrow dispute regarding certain tax measures." *Id.* (citations omitted). The Tribunal considered and rejected Spain's intra-EU objection. Dkt. 1-1 at 123–26 (Ex. A ¶¶ 380–88). On the merits, the Tribunal concluded that Spain was liable for a breach of its obligation under Article 10(1) of the ECT because it had violated the claimants' legitimate expectations that Spain's incentive scheme would remain stable, Dkt. 1 at 6 (Pet. ¶ 22). As a result of its findings, the Tribunal issued an award of €29.3 million in damages, plus arbitration costs, interest, and expenses. *Id.* (Pet. ¶ 23); Dkt. 1-1 at 288 (Ex. A ¶ 746); Dkt. 1-1 at 1276–77 (Ex. D ¶ 12). Spain requested an annulment of the Award on February 25, 2020, Dkt. 1 at 7 (Pet. ¶ 25), which the annulment committee denied, *id.*; *see* Dkt. 1-1 at 1485 (Ex. E ¶ 620). OperaFund and Schwab "assigned all rights, interest, and benefits under the [OperaFund award] to Blasket." Dkt. 1 at 3 (Pet. ¶ 5).

2. *Steag Award*

In December 2018, a Tribunal conducted a hearing on its jurisdiction over and the merits of Steag's claims. Dkt. 1 at 7 (Pet. ¶ 27). Steag asked the Tribunal to declare that Spain breached Article 10(1) of the ECT by modifying its incentive scheme and causing a loss of Steag's investment and to order Spain to pay compensatory damages, interest, and other

appropriate remedies. Dkt. 1-1 at 399–400 (Ex. B ¶ 165). Spain responded that the Tribunal lacked jurisdiction, *id.* at 400 (Ex. B ¶ 166), and that it had not violated the ECT, *id.* (Ex. B ¶ 166). It once again raised the intra-EU objection. *Id.* at 402 (Ex. B ¶ 169). It also argued that a Tribunal award in favor of Steag would constitute "state aid" under EU law and that "the European Commission has determined that an arbitral tribunal lacks the competence to authorize state aid." *Id.* at 407 (Ex. B ¶ 187).

On October 8, 2020, the Steag Tribunal issued its 228-page Decision on Jurisdiction, Liability, and Instructions on Quantum. Dkt. 1 at 7 (Pet. ¶ 28). The Tribunal concluded that "it had jurisdiction to resolve Steag's claim except as to a narrow dispute regarding certain tax measures." *Id.* (citations omitted). It considered and rejected Spain's intra-EU objection and its state aid arguments. Dkt. 1-1 at 420–43 (Ex. B ¶¶ 227–98). After finding jurisdiction, the Tribunal concluded that Spain had breached its obligation under the ECT to accord fair and equitable treatment to Steag's investment by frustrating Steag's legitimate expectation that Spain's incentive scheme would remain stable. Dkt. 1 at 7 (Pet. ¶ 28).

On August 17, 2021, the Tribunal issued the Steag Award, which ordered Spain to pay €27,675,000 as compensation, in addition to interest at the rate of 1.5%, compounded quarterly, from June 20, 2014, until the date of payment. Dkt. 1 at 7 (Pet. ¶ 29). The Tribunal also ordered Spain to pay 70% of Steag's €2,017,458.66 in legal representation costs, which amounts to €1,412,221.06. *Id.* Spain applied for annulment of the Award on December 15, 2021, and an *ad hoc* Committee constituted under the Convention rejected the application for annulment on September 30, 2024. *Id.* at 8 (Pet. ¶ 30). The Committee ordered Spain to pay Steag's legal costs and expenses in the amount of €712,426.869, together with interest at a rate of 4%. *Id.*

Steag "assigned all rights, interest, and benefits under the [Steag award] to Blasket." *Id.* at 3 (Pet. ¶ 5).

3. *Renergy Award*

The Renergy Tribunal conducted a hearing on its jurisdiction over and the merits of Renergy's claims in November 2018. Dkt. 1 at 8 (Pet. ¶ 32). Renergy asked the Tribunal to declare that Spain breached its obligations under Article 10(1) of the ECT by modifying its renewable energy incentives, and to order Spain to pay compensatory damages, interest, and costs. Dkt. 1-1 at 1031 (Ex. C ¶ 253). Spain challenged the Tribunal's jurisdiction and argued that it had not violated its ECT commitments. *Id.* at 1032 (Ex. C ¶ 256). On jurisdiction, Spain raised the intra-EU objection and EU law on state aid. Dkt. 1-1 at 1039–44 (Ex. C ¶¶ 260–84). The Tribunal rejected Spain's jurisdictional arguments, finding that it had jurisdiction to resolve Renergy's claims, except as a to a narrow dispute regarding certain tax measures. Dkt. 1 at 8 (Pet. ¶ 33); Dkt. 1-1 at 1053–1072, 1090 (Ex. C ¶¶ 325–418, 495). After finding jurisdiction, the Tribunal concluded that Spain had breached its obligation under the ECT to provide fair and equitable treatment by violating Renergy's legitimate expectations that the incentive scheme would remain relatively stable. Dkt. 1 at 8 (Pet. ¶ 33).

On May 6, 2022, the Tribunal issued an Award ordering Spain to pay €32,896,240 as compensation, in addition to interest at the Spanish 10-year bond yield rate, compounded monthly, from June 21, 2024, until the date of payment. Dkt. 1 at 8 (Pet. ¶ 34). Spain applied for annulment of the Award on September 2, 2022, and an *ad hoc* Committee constituted under the convention rejected the application for annulment on August 14, 2024. *Id.* at 8–9 (Pet. ¶ 35). The Committee also ordered Spain to pay Renergy costs in the amount of €498,568.61, together with interest at the Spanish 10-year bond yield rate, compounded monthly, until the date of

payment. *Id.* Renergy "assigned all rights, interest, and benefits under the [Renergy award] to Blasket." *Id.* at 3 (Pet. ¶ 5).

### C. Procedural History

On June 3, 2025, Blasket filed a petition in this Court to enforce the arbitration award against Spain. *See* Dkt. 1. On December 12, 2025, Spain moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2), and (b)(6) or, in the alternative, to stay the action pending resolution of related proceedings. *See* Dkt. 18. The motion to dismiss or to stay is fully briefed, *see* Dkts. 23, 26, and ripe for decision.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) seeking dismissal for lack of subject-matter jurisdiction may take one of two different forms. First, a Rule 12(b)(1) motion "may raise a 'facial' challenge to the Court's jurisdiction." *Hale v. United States*, No. 13-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015). A facial challenge asks whether the complaint alleges facts sufficient to establish the court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018). In this posture, the Court must accept the factual allegations of the complaint as true and construe them in the light most favorable to the non-moving party. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (collecting cases).

"Alternatively, a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction." *Hale*, 2015 WL 7760161, at *3. When a motion to dismiss is framed in this manner, "the [C]ourt may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the

motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). "The [C]ourt has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

**B. Rule 12(b)(2)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a basis for the exercise of personal jurisdiction over each defendant. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To do so, the plaintiff must "make a prima facie showing of the pertinent jurisdictional facts," *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988), meaning that the plaintiff must "allege specific acts connecting [each] defendant with the forum," *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012). "Mere conclusions or 'bare allegation[s]'" of jurisdiction are insufficient. *Fawzi v. Al Jazeera Media Network*, 273 F. Supp. 3d 182, 186 (D.D.C. 2017) (alteration in original) (citation omitted).

When evaluating whether the plaintiff has met its burden, "the Court need not treat all of plaintiffs' allegations as true." *Clay*, 907 F. Supp. 2d at 87. Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id*. (quotation marks omitted); *see also Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). To be sure, "[w]hen deciding personal jurisdiction without an evidentiary hearing—as here—the 'court must resolve factual disputes in favor of the plaintiff.'" *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). That does not require the Court to "'accept inferences drawn by [a] plaintiff[ ] if such

inferences are unsupported by the facts,'" however. *Id.* (quoting same). Ultimately, the Court must "satisfy itself that it has jurisdiction to hear the suit," and "may look beyond the allegations of the complaint" to do so. *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 173 (D.D.C. 2016).

**C. Rule 12(b)(6)**

In resolving a Rule 12(b)(6) motion to dismiss, the Court must take the allegations of fact contained in the petition as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (alterations in original). Under Rule 12(b)(6), "the Court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation modified).

## III. ANALYSIS

**A. Motion to Dismiss**

Spain moves to dismiss the petition on several grounds. First, it argues that Blasket cannot enforce any of the awards because it was not a party to the underlying arbitration proceedings that resulted in the awards. It further argues that because Blasket cannot enforce any of the awards, the Court lacks subject-matter jurisdiction under 22 U.S.C. § 1650a and personal jurisdiction over Spain under the FSIA, 28 U.S.C. § 1330(b). Dkt. 18-1 at 13. Spain next argues that none of the awards are entitled to full faith and credit under 22 U.S.C. § 1650a. *Id.* at 14–15. Finally, Spain invokes international comity, the foreign sovereign compulsion

doctrine, and the act of state doctrine as additional reasons the Court should decline to enforce the awards.[3] *Id.* at 15. The Court will take each argument in turn.

1. *Enforcement by assignee*

The Court starts with Spain's argument that "a purported assignee such as Blasket has no cognizable right to enforce the Awards under the ICSID Convention," Dkt. 18-1 at 34, and the downstream consequences of that argument for the Court's jurisdiction. To reach that conclusion, Spain relies on Article 54(2) of the Convention, which reads in relevant part: "A party seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary-General." ICSID Convention art. 54(2). According to Spain, this language grants the right to seek enforcement of an award only to "a 'party' to the underlying dispute." Dkt. 18-1 at 34. And because "a purported assignee such as Blasket has no cognizable right to enforce the Awards under the ICSID Convention," Spain contends, "[Blasket] cannot invoke that treaty or its implementing statute to establish this Court's jurisdiction over this action." *Id.*

In interpreting the ICSID Convention, the Court "is guided by principles similar to those governing statutory interpretation." *Iceland S.S. Co.-Eimskip v. U.S. Dep't of Army*, 201 F.3d

[3] Spain also argues that it is entitled to sovereign immunity from actions to enforce intra-EU awards and this case should be dismissed for *forum non conveniens.* Dkt. 18-1 at 16. As Spain acknowledges, however, both of those arguments are squarely foreclosed by D.C. Circuit precedent. *Id.* at 47, 50. In *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, the D.C. Circuit held that district courts have jurisdiction to confirm intra-EU awards under the FSIA's arbitration exception. 112 F.4th 1088, 1093, 1111 (D.C. Cir. 2024). It also reaffirmed its binding precedent holding that "*forum non conveniens* is not available in proceedings to confirm a foreign arbitral award." *Id.* at 1105; *see LLC SPS Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021). Because Spain raises "these arguments purely for purposes of preserving them given its pending *certiorari* petition on these exact issues," Dkt. 26 at 28, the Court need not address them further.

451, 458 (D.C. Cir. 2000). Those principles require the Court to begin with the treaty's text. *See Medellin v. Texas*, 552 U.S. 491, 506 (2008). The principal problem with Spain's argument is that Article 54(2)'s text does not speak to which individuals and entities have a right to enforce ICSID awards at all. It merely directs "[a] party seeking recognition or enforcement" to "furnish . . . a copy of the award certified by the Secretary-General" to a "competent court." ICSID Convention art. 54(2). As the only other federal court to have considered this question observed, this language "appears to do no more than describe the procedure that must be used by a party seeking recognition or enforcement of an award." *Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 380 (S.D.N.Y. 2012). Setting forth the procedural requirement that those seeking enforcement of an ICSID award present a certified copy of the award does not define or limit the category of entities who may initiate an enforcement proceeding. Simply put, Article 54(2) says nothing about assignability and says nothing about whether the word "party" refers to a "party" to the arbitration, a "party" to the enforcement proceeding, or—as the term is often used—simply "one," "a person or group," or "an individual, firm, or corporation." *See Party*, Webster's Third New International Dictionary at 1648 (1993). Suggesting that the ICSID Convention barred assignability in this obtuse and imprecise manner strains credulity.

Nor do any other textual clues suggest that the ICSID Convention uses "party" exclusively to refer to the parties to the arbitration. As Judge Gardephe explained in *Blue Ridge*, the ICSID Convention does not define the word "party," and context reveals that different provisions of the Convention use the term in different ways. *See* 902 F. Supp. 2d at 376–81. Article 64, for example, uses "party" to refer to Contracting States, while Article 67 uses "party" to refer to parties to the Statute of the International Court of Justice. Even more to the point, numerous provisions use the phrases "a party to the dispute" or "parties to the dispute," *Blue*

*Ridge*, 902 F. Supp. 2d at 378–79, and the modifying language "to the dispute" would be surplusage if, as Spain argues, "'party' was intended always to mean a 'party to the arbitration,'" *id.* at 380. In light of the Convention's varied, context-dependent uses of "party" and inclusion of the limiting phrase "to the dispute" in other provisions, the word "party" in Article 54(2) cannot bear the weight placed upon it by Spain. It is expansive enough to include those who did not participate in the arbitration proceeding but "seek[] recognition or enforcement" of a validly assigned ICSID award.

For those reasons, the Convention does not bar assignees from enforcing ICSID awards. That conclusion resolves Spain's additional contentions that Blasket's status as an assignee deprives the Court of subject-matter and personal jurisdiction and that this action should be dismissed because Blasket is not the real party in interest under Federal Rule of Civil Procedure 17. *See* Dkt. 18-1 at 33, 35. As Spain recognizes, Section 1650a grants federal courts "exclusive jurisdiction over actions and proceedings" to enforce an ICSID award. 22 U.S.C. § 1650a(b). Its challenge to the Court's subject-matter jurisdiction under Section 1650a is based solely on the contention that Article 54(2) prevents ICSID awards from being assigned. *See* Dkt. 18-1 at 32–33. Because Article 54(2) does not prohibit assignment, and Blasket brought this action to enforce three ICSID awards, the Court has subject-matter jurisdiction.

Finally, Spain contests personal jurisdiction only to the extent the Court lacks subject-matter jurisdiction, *see* Dkt. 18-1 at 32 n.12 (citing 28 U.S.C. § 1330(b), which conditions personal jurisdiction over foreign states on subject-matter jurisdiction), so the foregoing analysis also resolves that objection. As the assignee of the OperaFund, Steag, and Renergy Awards, Blasket is the real party in interest in this suit and a proper plaintiff under Rule 17. *See, e.g.*, *Beach TV Props., Inc. v. Solomon*, No. CV 15-1823, 2016 WL 6068806, at *15 (D.D.C. Oct. 14,

2016) (assignee is real party in interest); *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 52 (D.D.C. 2003) (same); 6A Wright & Miller, Federal Practice and Procedure § 1545 (3d ed.) ("the assignee is the real party in interest and can maintain the action").

**B. Full Faith and Credit**

Spain next argues that the awards are not entitled to full faith and credit because the "arbitral tribunals manifestly exceeded their authority and substantially infringed the exclusive jurisdiction of the EU courts" over disputes between EU Member States and EU investors, and disputes over state aid matters. Dkt. 18-1 at 37.

1. *Full Faith and Credit*

Article 54 of the Convention authorizes Contracting States with federal constitutions, such as the United States, to "enforce [an ISCID] award in or through its federal courts." ICSID Convention art. 54(1). It further permits those courts to "treat the award as if it were a final judgment of the courts of a constituent state." *Id.* Congress gave effect to Article 54 by enacting Section 1650a(a), which provides that ICSID arbitral awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

The Court's role in enforcing the final judgment of another court is strictly limited. "Preventing relitigation of issues already decided is the keystone of the full faith and credit obligation." *Valores*, 87 F.4th at 519. A court "may not deny a judgment full faith and credit because 'it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits.'" *Id.* (quoting *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (per curiam)). Rather, "[a] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Id.* at 520.

Applying that standard to an ICSID award in *Valores*, the D.C. Circuit "looked to three facts to determine that the award was entitled to full faith and credit." *Blasket*, 2024 WL 4298808, at *7. The Court must consider (1) whether ICSID had jurisdiction over the matter, but must defer to ICSID's finding of jurisdiction if the question was "fully and fairly litigation and finally decided" in the arbitration; (2) whether the award is authentic; and (3) "whether ICSID would treat the award as binding." *Valores*, 87 F.4th at 520; *see, e.g.*, *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. CV 20-817 (JDB), 2025 WL 2336428, at *6 (D.D.C. Aug. 13, 2025) (enforcing award where all three of the *Valores* requirements were met); *Blasket*, 2024 WL 4298808, at *7, 14 (same). As the *Valores* court further explained, Section 1650a "expressly forecloses collateral attack on ICSID awards in federal courts by excluding ICSID enforcement actions from the purview of the Federal Arbitration Act" ("FAA"), which "allows an enforcing court to vacate an arbitral award where the award was tainted by fraud, corruption, or misconduct by the arbitrator." 87 F.4th at 520. As a result, enforcement of an ICSID award does not implicate "even the 'extremely limited' review available under the FAA." *Id.* (citation omitted).

Spain does not challenge the award on any of the grounds recognized in *Valores*, and the Court's own review of the record confirms that the award satisfies the highly deferential *Valores* standard. The ICSID tribunal fully and fairly considered and rejected Spain's objections to its exercise of jurisdiction in all three proceedings. The record reveals no reason to doubt the authenticity of the award or whether the ICSID would treat it as binding. Awards are "binding on the parties" to an ICSID tribunal unless they are annulled, ISCID Convention art. 53(1), and the ICSID annulment committee denied Spain's annulment applications for all three of the awards. Dkt. 23 at 16.

Nonetheless, Spain contends that this case presents one of those rare circumstances when the full faith and credit obligation yields to other considerations. Citing *Blinder, Robinson & Co., Inc. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988), Spain argues that "a state court judgment may be collaterally attacked where the rendering court 'substantially infringed the authority of another tribunal or agency of government.'" Dkt. 26 at 13–14. Extending *Blinder*'s domestic full faith and credit analysis to Section 1650a, Spain asserts that, under EU law, EU institutions have exclusive authority over disputes between EU Member States and EU Investors, Dkt. 18-1 at 39, and "matters relating to state aid," *id.* at 41, and that, by issuing the three awards at issue in this case, the Centre infringed on those institutions' "exclusive authority," Dkt. 26 at 14. In Spain's view, "this Court is not only empowered but is required to consider whether the arbitral tribunal's exercise of jurisdiction infringed the exclusive authority of the CJEU and the European Commission" over intra-EU disputes and state-aid matters. *Id.* at 15.

In *Blinder*, however, the D.C. Circuit merely recognized a narrow exception to the general bar on reviewing the fully and fairly litigated jurisdictional determination of a prior court, not "a freewheeling exception to full faith and credit." *Blasket*, 2024 WL 4298808, at *9. There, the petitioners were attempting collaterally to attack an adverse judgment on the grounds that the issuing court lacked jurisdiction. *Blinder*, 837 F.2d at 1103. Citing the Supreme Court's decisions in *Kalb v. Feuerstein*, 308 U.S. 433 (1940), and *United States v. U.S. Fidelity Co.*, 309 U.S. 506 (1940), the petitioners argued that "relitigation is appropriate where . . . the prior court's jurisdiction is at issue." 837 F.2d at 1103. The D.C. Circuit disagreed. It explained that "[p]roperly read, both *Kalb* and *U.S. Fidelity* stand narrowly for the propositions that collateral attack is permitted only when the first court's proceeding substantially infringe[d] the authority of another tribunal or agency of government, or when it improperly trenched on sovereign

immunity." *Id.* at 1104 (citation modified). Finding the case "unexceptional," the court declined to review the issuing court's jurisdictional determination. *Id.*

*Blinder* recognizes only that under exceptional circumstances the Court may take up a petitioner's request to reconsider the jurisdiction of a prior court. There, the D.C. Circuit was doing no more than rejecting the petitioner's argument "that relitigation is appropriate where . . . the prior court's jurisdiction is at issue." *Id.* at 1103. It had no occasion to recognize a more general exception to the full faith and credit obligation when the prior court's jurisdiction is not at issue. And if the court had taken such a step, it likely would not have described the *Kalb* and *U.S. Fidelity* exceptions as "narrow[]." *Id.*

Close attention to the authorities cited in *Blinder* also confirms its narrow scope. In both *Kalb* and *U.S. Fidelity*, the challenging parties collaterally attacked state court judgments on the grounds that the issuing court lacked subject matter jurisdiction. *See Kalb*, 308 U.S. at 438–40; *U.S. Fidelity*, 309 U.S. at 512. Since then, the Supreme Court has described both *Kalb* and *U.S. Fidelity* as "exceptions" to "the general rule of finality of jurisdictional determinations." *Durfee v. Duke*, 375 U.S. 106, 114 (1963). *Blinder* also takes its specific formulation of the "substantial infringement" exception from a section of the Second Restatement of Judgments pertaining exclusively to circumstances that might overcome the bar on relitigating a prior court's subject matter jurisdiction. *See* Restatement (Second) of Judgments § 12(2) (1982) ("Contesting Subject Matter Jurisdiction").

Here, however, Spain does not ask the Court to reconsider the jurisdiction of the tribunal. To the contrary, Spain expressly disclaims that it is seeking to "relitigate the arbitral tribunal's jurisdiction." Dkt. 26 at 14. According to Spain, its intra-EU and state aid arguments do not challenge the tribunal's jurisdiction but, rather, subject the ICSID awards "to the same defenses

that are available against enforcement of a state court judgment in federal court," Dkt. 26 at 15; *see* Dkt. 18-1 at 45. But *Blinder* does not leave the door open for collateral attacks on a state-court judgment where the challenging party concedes that the issuing court had jurisdiction or, at least, declines to relitigate that issue—and that is particularly true where, as here, the challenging party had a full and fair opportunity to litigate the defense at issue before the tribunal. *See* (Dkt. 1-1 at 102–126). Because a state court judgment would not be subject to collateral attack on Spain's proffered grounds, the Court need not consider whether the *Blinder* exception is available on these facts, nor the merits of Spain's argument that the tribunals substantially infringed the authority of the EU.

Because Spain has expressly disavowed any intent to contest the jurisdiction of the tribunal and collaterally to attack the ICSID award on that ground, the Court need not consider whether it would satisfy the *Blinder* exception to the general bar on relitigating jurisdictional determinations. But for the sake of thoroughness, the Court notes that in other parallel proceedings to enforce ICSID awards, Spain has invoked the "substantial infringement" exception to challenge the ICSID tribunal's jurisdiction and has been uniformly rebuffed. *See Blasket Renewable Invs. v. Kingdom of Spain*, No. 1:19-CV-3783, 2025 WL 2320368, at *4 (D.D.C. Aug. 12, 2025); *Blasket*, 2024 WL 4298808, at *9–10. As those courts have explained, *Kalb* "concerned a specific circumstance not present here: one in which Congress, pursuant to its plenary authority over bankruptcy, crafted legislation that expressly deprived state courts of jurisdiction over property subject to ongoing bankruptcy proceedings." *Blasket*, 2025 WL 2320368, at *4. The Supreme Court has described *Kalb* as a case in which the "overriding consideration[]" of federal preemption was "controlling." *Durfee*, 375 U.S. at 114. Following the Supreme Court's lead, lower courts have generally declined to extend the *Blinder* exception

to cases that do not implicate federal preemption. *See Blasket*, 2024 WL 4298808, at *10 (collecting cases). Because this case does not involve federal preemption or "any similar principle under which EU law might preemption the ICSID convention," *Blasket*, 2025 WL 2320368, at *9, and because the tribunal's jurisdiction is not at issue and, in any event, has already been fully and fairly litigated, the Court declines to take up Spain's invitation to carve out a new exception to the full faith and credit obligation. As the D.C. Circuit has stressed, "[p]reventing relitigation of issues already decided is the keystone of the full faith and credit obligation." *Valores*, 87 F.4th at 521.

The foregoing analysis also resolves Spain's additional suggestion that "a state court judgment may be collaterally attacked when the matter was 'so plainly beyond the [rendering] court's jurisdiction that its entertaining the authority was a manifest abuse of authority.'" Dkt. 26 at 14 (citation omitted). In support of this argument, Spain cites the Supreme Court's decision in *Travelers Indem. Co. v. Bailey*, which quoted—but did not adopt—the Second Restatement of Judgment's description of "three exceptional circumstances in which a collateral attack on subject-matter jurisdiction is permitted." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 n.6 (2009). Spain has not identified any D.C. Circuit precedent applying the so-called "manifest abuse of authority" exception to the full faith and credit obligation, nor identified any cases in the Restatement applying the exception in circumstances like those presented here. And in any event, the "manifest abuse of authority" exception appears in the same section of the Restatement as the "substantial infringement" exception, and so applies, if at all, to the bar on

relitigating a prior court's jurisdictional determinations, which Spain does not seek to overcome here.[4]

2. *Comity and Foreign Sovereign Compulsion Doctrine*

Spain also argues that considerations of international comity and the related foreign sovereign compulsion doctrine weigh against enforcement of the award. Dkt. 18-1 at 41. International comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Usoyan v. Republic of Turkey*, 6 F.4th 31, 48 (D.C. Cir. 2021) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). The application of comity principles "varies according to the factual circumstances surrounding each claim for its recognition." *Laker Airways*, 731 F.2d at 937; *see Usoyan*, 6 F.4th at 48 (identifying "three faces" of the comity doctrine "in U.S. law"). Spain contends that the enforcement of the ICSID award would subject Spain to obligations with which it could not comply without violating EU law on state aid. Dkt. 18-1 at 42–44. Because Spain asks the Court to defer to EU regulatory

[4] The Court notes that in its opening brief, Spain argued that "EU law is clear that Spain lacked the legal capacity to agree to arbitrate intra-EU disputes" in non-EU forums. Dkt. 18-1 at 37. It then suggested that Court should independently determine whether Spain and the EU investors formed a valid arbitration agreement "[b]ecause the existence of an arbitration agreement is a jurisdictional fact under the FSIA, the district court [is] required to decide [Spain's] claim de novo." *Id.* at 37. As Blasket correctly points out in response, "that rule applies in the context of ensuring the court's *own* jurisdiction under the [arbitration exception of the] FSIA." Dkt. 23 at 32; *see Hulley Enters. Ltd. v. Russian Fed'n*, 149 F.4th 682, 690 (D.C. Cir. 2025). It does not apply in the context of determining whether to give full faith and credit to an ICSID award pursuant to Section 1650a. Spain wisely does not defend this argument in its reply brief. As it recognizes multiple times, Dkt. 18-1 at 47; Dkt. 26 at 28, the D.C. Circuit has held that district courts have jurisdiction under the FSIA's arbitration exception over petitions to enforce ICSID awards arising out of disputes between EU Member States and EU investors. *See NextEra*, 112 F.4th at 1102–03.

law, its comity argument implicates the prescriptive component of comity to which the foreign sovereign compulsion doctrine is closely related.

Prescriptive comity refers to "the respect sovereign nations afford each other by limiting the reach of their laws" over extraterritorial conduct. *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) (quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting)) (addressing the extraterritorial reach of the Sherman Act); *see Usoyan*, 6 F.4th at 48 (defining prescriptive comity as "deference to foreign lawmakers"); *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014). In practice, it functions as a "canon of construction." *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 100 (2d Cir. 2019). Where U.S. regulatory law and foreign regulatory law impose conflicting obligations, the "principles of prescriptive comity" may counsel in favor of construing an ambiguous statute "to avoid unreasonable interference with the sovereign authority of other nations." *Empagran S.A.*, 417 F.3d at 1271; *see In re Picard*, 917 F.3d at 100 ("[P]rescriptive comity . . . asks a question of statutory interpretation: should a court presume that Congress out of respect for foreign sovereigns, limited the application of domestic law on a given set of facts?") (citation modified).

The foreign sovereign compulsion doctrine is closely related to, albeit distinct, from prescriptive comity. *See In Re: Vitamin C Antitrust Litig.*, 8 F.4th 136, 145–46 (2d Cir. 2021); Restatement (Fourth) of Foreign Relations Law § 442 (2018) ("[T]he defense reflects the practice of states in the interests of comity."). Principally applied in antitrust cases, the doctrine "shields from . . . liability the acts of parties carried out in obedience to the mandate of a foreign government." *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979). Courts have, however, "applied the same comity-based principles in other situations more

closely analogous to those here, where a Court compels compliance with U.S. law in a manner that may put a litigant at odds with its obligations under foreign law." *Blasket*, 2024 WL 4298808, at *13 (collecting cases in which U.S. courts consider "whether to enforce a subpoena when the law of a foreign state prohibits producing the relevant materials"). Although the D.C. Circuit has not adopted the doctrine, it has observed in dicta that "it causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question." *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987).

Neither prescriptive comity nor the foreign sovereign compulsion doctrine is available to Spain to avoid enforcement of the ICSID award. Both doctrines are defenses to liability under U.S. law that seek to alleviate conflicts between the regulatory law of the United States and of other sovereigns. Here, however, Petitioner simply asks the Court to enforce a foreign judgment, not to apply U.S. regulatory law to extraterritorial conduct or to compel compliance with U.S. law. To determine the enforceability of the ICSID award, the Court need not consider the "extraterritorial reach of federal statutes," *Mujica*, 771 F.3d at 598, or ask whether EU law compelled Spain to violate U.S. law, *cf. Mannington Mills*, 595 F.2d at 1293 (determining whether the foreign government's order "compelled the American business to violate American antitrust law"). There is, in other words, no conflict between U.S. regulatory law and EU regulatory law that the application of prescriptive comity or the foreign sovereign compulsion doctrine could avoid. *See In re Sealed Case*, 932 F.3d 915, 931 (D.C. Cir. 2019); *In re Picard*, 917 F.3d at 103; Restatement (Fourth) of Foreign Relations Law § 442 (2018) ("The defense of foreign-state compulsion arises only if two or more states have overlapping legitimate claims of *prescriptive* jurisdiction over persons, property, or conduct." (emphasis added)). Finally,

enforcing the award would not require Spain to take any action that it is not already required to take under the terms of the ICSID Convention. Indeed, while invoking notions of comity, it is Spain that asks this Court to issue a decision that would conflict with international law, as embodied in the ICSID Convention and Energy Charter Treaty and as interpreted by the international tribunal with authority to resolve the parties' dispute.

Because Blasket asks the Court to enforce a foreign judgment, this case presents a question of, if anything, adjudicatory comity, which "teaches that, when possible, the decisions of foreign tribunals should be given effect in domestic courts," *Laker Airways*, 731 F.2d at 937; *see Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895) (holding that, in general, foreign judgments should be enforced "where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction"). That is so because "recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Laker Airways*, 731 F.2d at 937; *cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) ("concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' [arbitration] agreement").

Moreover, "when a treaty (and, as relevant here, the domestic law implementing it) requires a court to recognize a foreign judgment, adherence to that mandate is what comity requires." *Blasket*, 2025 WL 2336428, at *8; *see Hilton v. Guyo*t, 159 U.S. 113, 162–63 (1895) (when determining "the force and effect of foreign judgments," the "most certain guide, no doubt, . . . is a treaty or a statute of this country"); *see also Laker Airways*, 731 F.2d at 937, 940. In joining the ICSID Convention and enacting Section 1650a, the political branches considered

the "laws, policies and interests," *Usoyan*, 6 F.4th at 48, of the United States and the other treaty signatories and decided that they would be served by the enforcement of ICSID awards. *See Blasket*, 2024 WL 4298808, at *13 ("[C]omity concerns are essentially 'baked in' to the ICSID Convention and its implementing statute."). It is not this Court's role to reweigh the public policy considerations underlying the political branches' decision to afford full faith and credit to ICSID awards. *Cf. Simon v. Republic of Hungary*, 911 F.3d 1172, 1181 (D.C. Cir. 2018) (holding that the Foreign Sovereign Immunity Act's "comprehensive set of legal standards" left "no room . . . for the extra-textual, case-by-case judicial reinstatement of immunity" based on considerations of international comity), *vacated on other grounds*, 592 U.S. 207 (2021). Indeed, as other courts have pointed out, even on Spain's theory, failing to enforce an ICSID award on policy grounds would avoid one conflict at the cost of creating another between the application of EU law and United States's obligations under the ICSID Convention. *Blasket*, 2024 WL 4298808, at *13; *see* ICSID Convention art. 54(1).

It is therefore unsurprising that the D.C. Circuit has rejected a resort to "international comity" as a defense to the enforcement of an ICSID award on similar facts. In *Micula v. Romania*, the court was unpersuaded by Romania's challenge to enforcement of an ICSID award based on a purported "incompatibility between Romania's EU obligations and the district court's confirmation of the award." 101 F.4th 47, 54 (D.C. Cir. 2024). Since the district court had jurisdiction, the D.C. Circuit held, "it was obligated by Section 1650a to enforce the [] valid ICSID award." *Id.* at 54–55. So too, here.

For the reasons already explained, the ICSID award is entitled to full faith and credit, and the Court therefore has both the jurisdiction and the obligation to enforce the ICSID award.

3. *Act of State Doctrine*

Spain's final argument, which seeks refuge in the act of state doctrine, is easily rejected. The act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)). More specifically, where it applies, the act of state doctrine requires U.S. courts to treat "official action by a foreign sovereign" within its own boundaries as a binding "rule of decision." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (citation modified); *Ricaud v. Am. Metal Co.*, 246 U.S. 304, 310 (1918) ("Such action when shown to have been taken, becomes, as we have said, a rule of decision for the courts of this country."). The doctrine has no application, however, unless "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick*, 493 U.S. at 405. Where "the validity of no foreign sovereign act is at issue," the act of state doctrine "has no application." *Id.* at 409–10.

Because enforcing the ICSID award would not require the Court to pass on the validity of any EU law or decision, the act of state doctrine does not apply. Blasket does not "challenge[] the acts or decisions of" the EU in this court. *Micula v. Gov't of Romania*, No. 20-7116, 2022 WL 2281645, at *2 (D.C. Cir. June 24, 2022) (declining to apply the act of state doctrine to reverse decision enforcing ICSID award). It seeks only "to enforce a decision rendered by a forum for international arbitration to which [Spain] has voluntarily submitted itself." *Id.* As already explained, in deciding whether to enforce an ICSID award, the Court's "role is cabined to examining ICSID's jurisdiction over the dispute, the authenticity of the award, and whether ICSID would treat the award as binding." *Blasket*, 2024 WL 4298808, at *12 (citing *Valores*, 87

F.4th at 520). Inquiring into these prerequisites for enforcing an ICSID award does not require the Court to apply, let alone declare invalid, the European Commission's decision that "arbitral awards purporting to compensate investors for Spain's modification of its renewable energy regime constitutes unlawful state aid." Dkt. 18-1 at 46–47; *see Blasket*, 2024 WL 4298808, at *12; *Nextera Energy Glob. Holdings B.V. v. Kingdom of Spain*, 656 F. Supp. 3d 201, 219 (D.D.C. 2023), *overruled in part on other grounds* 112 F.4th 1088 (D.C. Cir. 2024). In other words, because the validity of the EU's state-aid law "is simply not a question to be decided in the present suit, . . . there is [] no occasion to apply the rule of decision that the act of state doctrine requires." *W.S. Kirkpatrick*, 493 U.S. at 406.

**C. Stay of Proceedings and Request for Relief**

Finally, Spain argues that "[i]f the Court is not inclined to dismiss the Petition at this time, the Court should stay this action pending the outcome of ongoing proceedings before the D.C. Circuit and the Supreme Court." Dkt. 18-1 at 53. The first of those proceedings involves several consolidated appeals pending before the D.C. Circuit about "similar ICSID award[s] that [were] issued to investors as a result of Spain's modification of its renewable energy regime." *Id.* at 55. Spain also relies on its petition for a writ of certiorari in *Kingdom of Spain v. Blasket Renewable Investments LLC*, No. 24-1130, which seeks resolution of an asserted circuit split over the availability of *forum non conveniens* in proceedings to confirm international arbitral awards. *Id.* at 54–55. Blasket objects to Spain's request on the grounds that the Court must follow binding D.C. Circuit precedent until it is overruled. Dkt. 23 at 53. It also observes that a stay would be inconsistent with the ICSID Convention's streamlined enforcement procedures and would prejudice Petitioner by delaying enforcement of the ICSID award. *Id.* at 54.

"[T]he power to stay proceedings is incidental to the inherent power in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936). When deciding whether to stay proceedings, the Court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 255). "[A] stay may be warranted where the resolution of other litigation will likely narrow the issues in the pending cases and assist in the determination of the questions of law involved." *ACF Renewable Energy Ltd. v. Republic of Bulgaria*, 804 F. Supp. 3d 141, 152 (D.D.C. 2025) (citation modified).

Because Spain has not shown that staying this action would promote judicial efficiency, the Court declines the request. On June 29, 2026, the Supreme Court denied Spain's petition for certiorari in *Spain v. Blasket Investments LLC*, No. 24-1130, 2026 WL 1855038 (U.S. June 29, 2026). To the extent that Spain's request for a stay was based on the possibility that the Supreme Court might grant certiorari and overrule D.C. Circuit precedent holding that *forum non conveniens* is unavailable in proceedings to confirm international arbitration awards, that request is now moot. Nor would staying these proceedings pending the D.C. Circuit's resolution of the pending appeals about similar ISCID awards promote judicial efficiency. Although the parties have already fully briefed Spain's motion to dismiss, the D.C. Circuit only recently set a briefing schedule in the consolidated appeals. *See* Per Curiam Order, *Spain v. Blasket Investments LLC*, No. 25-7136 (D.C. Cir. July 10, 2026).

The Court is also unpersuaded that the value of any additional clarity generated by the D.C. Circuit's resolution of the pending appeals would justify further delay. For one thing, part of the purpose of full faith and credit is to provide a prompt means of enforcing a judgment entered by another tribunal after the parties' claims and defenses are fully aired and to "[p]revent[] relitigation of issues already decided." *Valores*, 87 F.4th at 519. Permitting an

interminable series of delays undermines that purpose. For another, a key factor relevant to the propriety of a stay is "the likelihood that the party seeking the stay will prevail on the merits." *de Csepel v. Hungary*, No. CV 10-1261 (JDB), 2022 WL 3026998, at *2 (D.D.C. Aug. 1, 2022) (citation modified). Although the movant "need not always establish a high probability of success on the merits," it must show, at least, that "a serious legal question is presented." *Id.* Spain has not met that burden. For the reasons explained above, binding D.C. Circuit precedent confirms that the award is entitled to full faith and credit and not susceptible to attack on grounds of international comity and related principles. In addition, numerous district courts have rejected versions of the arguments Spain raises in its motion to dismiss. In light of D.C. Circuit precedent setting out the limited role of the federal district courts in confirming ISCID awards and the array of decisions from this Court applying that precedent to enforce similar ISCID awards, the pending appeals do not present a "serious legal question" about the ISCID award at issue in this case. *Cf. ACF Renewable Energy Ltd.*, 804 F. Supp. 3d at 152 (denying request for a stay based on the possibility that the Supreme Court would reverse D.C. Circuit precedent because the court was "obligated to follow controlling circuit precedent" until it was overruled).

Beyond seeking dismissal or, in the alternative, a stay, Spain offers no response or objection to Petitioner's request that the Court enter judgment in the amount specified in the award. The Court will, accordingly, grant the petition and will enter relief in favor of Blasket for the full amount specified in the arbitral awards. Dkt. 1-1 at 288 (Ex. A ¶ 746), 355–56 (Ex. B ¶ 111), 358–59 (Ex. B ¶ 117), 1245 (Ex. C ¶ 1072), 1277–78 (Ex. D ¶ 12), 1485 (Ex. E ¶ 620), 1711–12 (Ex. F ¶ 559), 1783 (Ex. G ¶ 233); Dkt. 1 at 12–13.[5]

[5] Blasket requests that the Court enter judgment in USD. Dkt. 1 at 11. All three awards were issued by ICSID, in whole or in part, in EUR. Converting those portions to USD would raise

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Respondent's motion to dismiss or stay this action, Dkt. 18, and will **ENTER** judgment in Petitioner's favor in the amounts specified in the awards.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 30, 2026

questions about exchange rates that the parties have not briefed, including whether conversion should rely on the exchange rate at the time the arbitral award was entered, or at the time of entry of judgment by this Court. The Court will therefore decline to convert the arbitral awards in the first instance, and will enter judgment in the denominations used in the arbitral awards themselves.